George E. Bartol, Jr. v. Commissioner.
Bartol v. Commissioner
Docket No. 26538.
United States Tax Court
1952 Tax Ct. Memo LEXIS 193; 11 T.C.M. (CCH) 527; T.C.M. (RIA) 52162; May 29, 1952
*193 Morse Garwood, Esq., and Shippen Lewis, Esq., for the petitioner. Charles J. Hickey, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves gift tax deficiencies of $4,045.02 for 1946 and $4,644.76 for 1947. The sole question involved is the value of shares of stock which petitioner gave his son in those years. Petitioner reported the gifts in his returns at a value of $150.70 per share in 1946 and $150 per share in 1947, while the respondent has determined a value of $250 a share. Some of the facts have been stipulated. Findings of Fact The stipulated facts are found as set forth in the stipulation. Petitioner is a resident of Wynnewood, Pennsylvania. He filed gift tax returns for 1946 and 1947 with the collector for the first district of Pennsylvania. On September 18, 1946, petitioner transferred to his son as a gift 200 shares of the common stock of the C. Howard Hunt Pen Company. On January 13, 1947, he made another gift to his son of 200 shares of the same stock. C. Howard Hunt Pen Company, hereinafter referred to as Hunt Pen Company, is engaged in the business of manufacturing pen points, pencil sharepeners *194 and a few miscellaneous hardware specialties such as appear for sale on chain store counters. It was organized about 1900. Petitioner has been president of the company for over 35 years. Prior to the gift of the 200 shares to his son in 1946 he owned 3,571 of the 5,000 common shares issued and outstanding. All of the stock is closely held. It is not listed on any stock exchange and has never been traded in to any appreciable extent. There were no sales of stock sufficiently close to the dates of the gifts to establish its values at those times. Hunt Pen Company is one of the country's largest manufacturers of carbon steel pen points. It has about 300 regular employees. Prior to World War II its output was about equally divided among pen points, pencil sharpeners and miscellaneous articles. It discontinued manufacturing pencil sharpeners, under government orders, from about 1942 until 1945. Over the period 1935 to 1945, inclusive, its net sales increased from about $575,000 in 1935 to about $2,606,000 in 1945. In 1946 they were $3,029,538.28 and in 1947 $2,457,115.27. Net profits, before income and excess profits taxes increased from $81,134.23 in 1935 to $243,930.03 in 1944 and in *195 1945 and 1946 amounted, respectively, to $396,991.54 and $428,890.11. After the peak year 1946 there was a decline in both net sales and net profits. Net profits were $317,167.05 in 1947, $92,454.54 in 1948, and $89,312.38 in 1949. Cash dividends were paid on the common shares amounting to $10,000 in 1935 and 1936, and $55,000 in each of the years 1937 to 1946 except 1940 when the dividend was $65,000. The sharp increase in profits in 1946 and 1947 was due in part to the heavy demand in those years for petitioner's higher-priced commodities on which there was a larger margin of profit. The inventories of petitioner's principal customers were low and there was a ready market for all of the goods it was able to produce. In 1947 competition became keener and the advent of the low-priced ball point fountain pen was cutting into petitioner's market for fountain pen points. The popularity also of low-priced mechanical pencils tended to reduce the demand for pencil sharpeners. The balance sheets of Hunt Pen Company show a gradual increase in both assets and surplus over a long period. From 1935 to 1946, inclusive, total assets increased from $366,400.79 to $1,258,301.44; current assets *196 from $199,070.93 to $891,071.57; and earned surplus from $45,912.65 to $659,351.39. Property, plant and equipment were carried in the 1946 balance sheet at $234,475.80, including land $6,225.13, buildings $75,809.31 machinery and equipment $144,627.83, and office furniture and fixtures $7,642.30. The common stock of Hunt Pen Company had a value of $150 per share both on September 18, 1946, and on January 13, 1947. Opinion LEMIRE, Judge: Petitioner valued the Hunt Pen Company shares of common stock in his gift tax returns for 1946 and 1947 at $150.70 and $150 per share, respectively. It is not explained why the valuation was 70 cents per share greater in 1946 than in 1947. Petitioner now contends that the value of the shares was not in excess of $110 per share in either of the years. This valuation was supported by his expert witness. On the other hand the testimony of respondent's expert witness supported his valuation of $250 per share. The witnesses were both well qualified and both gave what appeared to be sound reasons for their opinions. Their difference of opinion is no more than normal in such cases. In making their estimates they merely gave different degrees of weight *197 to different factors affecting the value of the shares, such as those relating to the history and financial condition of the corporation, its position in the rather specialized industry in which it operated, the fact that its stock is closely held and is not a listed stock, and the fact that the gifts in question involved only relatively small blocks of the company's outstanding shares. Giving due consideration to the opinion testimony of the witnesses, as well as the other evidence, we have found above that the fair market value of the shares at the dates of the gifts was $150 per share, the values, approximately, at which petitioner reported them in his gift tax returns. Decision will be entered under Rule 50.